

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

December 11, 2024

**BY ECF**
The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *United States v. Anthony Smalls*, 23 Cr. 160 (AT)

Dear Judge Torres:

The Government respectfully submits this letter in advance of defendant Anthony Smalls' sentencing in this violation of supervised release ("VOSR") proceeding, which is scheduled for December 20, 2024, at 1:00 p.m. For the reasons set forth below, the Government respectfully submits that a Guidelines sentence followed by no period of supervised release would be sufficient but not greater than necessary to serve the purposes of sentencing.

## I.   Underlying Offense Conduct

In October 2019, the defendant participated in a conspiracy to, and did, cash fraudulent U.S. Postal money orders. Specifically, Smalls and his co-conspirator were found in possession of 58 blank U.S. Postal money orders that were stolen from a post office in Prairieville, Louisiana and 22 fraudulently printed U.S. Postal money orders that were stolen from a post office in New York. Additionally, Smalls and his co-conspirator cashed and attempted to cash several fraudulent money orders at six post offices in Baton Rouge, Louisiana, and the surrounding area. Smalls cashed at least two of these checks, and in doing so, used a New York driver's license in a different name that matched the name on the fraudulently printed money orders.

On July 22, 2021, the defendant pled guilty, pursuant to a plea agreement, to conspiracy to pass altered postal money orders, in violation of Title 18, United States Code, Section 371; two counts of passing an altered postal money order, in violation of Title 18, United States Code, Section 500; and receiving stolen government property, in violation of Title 18, United States Code, Section 641. The Honorable Carl J. Barbier, U.S. District Judge for the Eastern District of Louisiana, sentenced Smalls to 37 months' imprisonment to be followed by three years of supervised release. On September 12, 2022, the defendant's sentence was amended to 24 months and 10 days' imprisonment to account for a period that he spent in state custody. Smalls was released and commenced his term of supervision in this district on October 14, 2022.

## II. Violations of Supervised Release and Procedural History

Almost immediately after his release, the defendant violated his conditions of supervised release through illicit substance abuse, beginning with several positive tests for marijuana use and then, starting in June 2023, cocaine use. Smalls was referred to outpatient substance abuse treatment but struggled to maintain attendance and failed to report for numerous treatment sessions. Additionally, on August 3, 2023 and October 6, 2023, Smalls submitted a urine specimen that tested positive for amphetamines, in addition to marijuana and cocaine. Also, in an August 31, 2023 phone call with Smalls' then treatment counselor, the United States Probation Office ("Probation") was informed that on August 24, 2023, Smalls attempted to alter a drug test by filling the test cup with water.

On September 5, 2023, Probation was notified that Smalls was arrested in Wallkill, New York and charged with false personation and criminal possession of a controlled substance (oxycodone). Smalls alleged that he had a prescription for oxycodone but was unable to produce such a prescription to Probation.

After September 5, 2023, Smalls ceased all contact with Probation. Probation attempted to conduct a home visit but was unable to gain access to the apartment building of Smalls' last reported residence and Smalls' cell phone appeared to be disconnected. Probation was also unsuccessful in reaching Smalls through his treatment provider, which reported that Smalls last attended treatment on September 21, 2023. Probation also contacted the mother of one of Smalls' children, with whom Smalls had reported he was residing, but she informed Probation that Smalls had not resided with her since December 2022 and she did not have any contact information for him. On October 31, 2023, the Court issued a warrant for Smalls' arrest.

On February 1, 2024, approximately seven months after he last contacted Probation, Smalls was arrested and appeared before U.S. Magistrate Judge Robert W. Lehrburger. Smalls was released subject to certain conditions. On February 20, 2024, the defendant appeared before the Court. The parties agreed on and the Court ordered a modification of Smalls' conditions of supervised release to include six months of residential substance abuse treatment.

On February 27, 2024, Smalls was admitted to residential treatment at Samaritan Daytop Village-Ellenville. However, two weeks later, on March 12, Smalls was unsuccessfully discharged. His case manager reported to Probation that Smalls was aggressive with staff, possessed a cellphone contrary to program rules, and allegedly used synthetic marijuana. The next day, on March 13, Probation identified another treatment provider, Odyssey House, and arranged for Smalls' admission. However, two months later, on May 19, 2024, the program notified Probation that Smalls had tested positive for marijuana and was allegedly using synthetic marijuana on site. On May 28, 2024, Probation met with Smalls' case manager, who reported that Smalls had admitted to using marijuana while outside of the facility on visits to Probation on Tuesdays. Probation, however, had never instructed Smalls to report on Tuesdays and he had not been doing so. Subsequently, on June 1, Probation was notified that Smalls was observed on his bed at the facility surrounded by a strong odor of synthetic marijuana and had been observed exiting a restroom in which two rolled up "joints" were subsequently found in the toilet. On June 2, 2024, Smalls terminated his treatment at Odyssey House, without consultation with Probation.

On June 6, 2024, Smalls contacted Probation and reported his admission to the Bowery Residents' Committee Chemical Dependency Program ("BRC"). From June to mid-August, Smalls progressed well at BRC. However, on August 16, 2024, Smalls received approval to leave BRC to address an open warrant in Wallkill, New York, but did not return until the following day, in violation of program policy. As a result, Smalls was administratively discharged from BRC on August 17, 2024. Still, due to his progress at BRC, Smalls was referred to yet another inpatient substance abuse program, Phoenix House.

On August 27, 2024, Smalls informed Probation that Phoenix House did not accept his health insurance and therefore denied his application for their residential treatment program. Probation instructed Smalls to report to Probation on August 29, but Smalls never appeared.

On September 4, 2024, Probation was notified that Smalls was arrested in Wallkill, New York in connection with an outstanding warrant for bail jumping tied to a missed court appearance that occurred while Smalls was in residential treatment. Smalls did not notify Probation of this arrest.

On September 16, 2024, Smalls failed to appear for a status conference on these VOSR proceedings. The Court adjourned the appearance until October 15, 2024. In the interim, Probation unsuccessfully attempted to visit Smalls at his last reported residence multiple times. The mother of one of Smalls' children indicated that Smalls no longer resided at that address, she did not have any contact information for him, and he may have been living with another girlfriend in Middletown, New York.

On October 11, 2024, Probation filed an amended violation report describing fourteen specifications that are related to the conduct described above (the "Violation Report"). On the same day, the Court issued a warrant for Smalls' arrest. On October 21, approximately two months after he last contacted Probation, Smalls was arrested and appeared before U.S. Magistrate Judge Gary Stein. Smalls was detained.

On November 4, 2024, the defendant appeared before Your Honor and admitted to the tenth, eleventh, and twelfth specifications in the Violation Report, which allege that the defendant failed to participate in residential substance abuse treatment in that he was unsuccessfully discharged or terminated treatment, as applicable, with Samaritan Daytop Village-Ellenville, Odyssey House, and BRC. Additionally, the defendant admitted to the thirteenth specification in the Violation Report, which alleges that he failed to report to Probation on or about August 29, 2024, or anytime thereafter.

### III. Applicable Law

Upon finding that the defendant has violated a condition of supervised release, the Court may revoke supervised release and require the defendant to serve a period of incarceration. *See* 18 U.S.C. § 3583(e). When imposing a sentence for a violation of supervised release, the Court must consider the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to afford adequate deterrence

to criminal conduct and to protect the public from further crimes of the defendant, and the applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range. *See* 18 U.S.C. §§ 3553(a); 3583(e).

In assessing the appropriate sentence for violating conditions of supervised release, "the primary goal of a revocation sentence" is "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," in order to account for the breach of trust inherent in failing to follow the court-imposed conditions of supervised release. U.S.S.G. Ch. 7, Pt. A(3)(b). Thus, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." *Id.*; *see also United States v. Peguero*, 34 F.4th 143, 161 (2d Cir. 2022); *United States v. Sindima*, 488 F.3d 81, 86 (2d Cir. 2007).

Here, the defendant admitted to specifications ten, eleven, twelve, and thirteen of the Violation Report, all Grade C violations. Because the defendant was originally convicted of a Class C Felony and was in Criminal History Category V when he was originally sentenced, (Violation Report at 13), the applicable Guidelines range is 7 to 13 months' imprisonment. *See* U.S.S.G. § 7B1.4(a). And, because the defendant's underlying conviction was a Class C Felony, the maximum term of imprisonment that can be imposed is two years. *See* U.S.S.G. § 3583(e)(3). The maximum term of supervised release that can be imposed following any term of imprisonment is three years less any term of imprisonment imposed for the instant violation. *See* 18 U.S.C. § 3583(h).

## IV. Discussion

A Guidelines sentence followed by no term of supervised release would be sufficient but not greater than necessary to serve the purposes of sentencing. Probation recommends a sentence at the top of the Guidelines range with no period of supervised release to follow.

The nature and circumstances of the defendant's conduct demonstrate a serious lack of respect for the Court, Probation, and the requirements of his supervised release. *See* 18 U.S.C. § 3553(a)(1). Smalls has been provided numerous opportunities to comply with the terms of his supervised release but has utterly failed time and time again. Almost immediately after his release from prison, Smalls violated the conditions of his supervision through the use of illicit substances and the failure to participate in an outpatient treatment program. Nevertheless, recognizing that the defendant's struggles may be tied to addiction, the Court, Probation, and the Government afforded Smalls an opportunity to complete a residential treatment program. However, Smalls has instead cycled through three treatment programs, unsuccessfully completing all of them. Perhaps most significantly, he also simply stopped contacting Probation for two extended periods. First, for approximately seven months and again, more recently, for approximately two months. In both instances, warrants were issued for his arrest. Absent such action by the Court, there is no indication that the defendant would have reengaged with Probation. This is a flagrant breach of the Court's trust, a complete disregard for the terms of supervised release, and warrants a custodial sentence.

**V.     Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose a term of imprisonment within the Guidelines, to be followed by no term of supervised release.

          Respectfully submitted,

          DAMIAN WILLIAMS
          United States Attorney for the
          Southern District of New York

    by:  /s/
          Varun A. Gumaste
          Assistant United States Attorney
          (212) 637-1023

Cc: Marne L. Lenox, Esq. (by ECF)